# 12-1269-cv

## United States Court of Appeals
### for the
### Second Circuit

IN RE: AMES DEPARTMENT STORES, INCORPORATED

———————————

CELLMARK PAPER INCORPORATED,

*Creditor-Appellant,*

— v. —

AMES DEPARTMENT STORES, INCORPORATED,

*Debtor-Appellee.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## SPECIAL APPENDIX

PULLMAN & COMLEY, LLC
*Attorneys for Creditor-Appellant*
850 Main Street
P.O. Box 7006
Bridgeport, Connecticut 06601
(203) 330-2000

# Table of Contents

**Page**

Opinion and Order of the Hon. John G. Koeltl, Dated
    February 28, 2012, Appealed From .................................... SPA-1

Judgment, Dated April 8, 2011, Appealed From .................... SPA-19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

IN RE AMES DEPARTMENT STORES, INC.                    11 Civ. 4289 (JGK)
ET AL.,

                                    Debtors.
                                                      OPINION AND ORDER
CELLMARK PAPER, INC.,

                                    Appellant,

                       - against -

AMES MERCHANDISING CORPORATION,

                                    Appellee.
_____

        The appellant, Cellmark Paper, Inc. ("Cellmark"), appeals

from a judgment entered by the United States Bankruptcy Court

for the Southern District of New York (Gerber, J.), following a

bench trial.  The Bankruptcy Court found that the appellee, Ames

Merchandising Corporation ("Ames"), was entitled to recover as

preferential transfers, pursuant to sections 547 and 550 of the

Bankruptcy Code, four transfers totaling $1.9 million[1] made to

Cellmark in the ninety-day preference period preceding Ames'

August 20, 2001 bankruptcy filing.  Cellmark was Ames' principal

supplier of paper used for promotional material.  The parties'

_____

[1] Ames initially sought to recover all of the $6.7 million it
transferred to Cellmark during the preference period.  However,
before trial, Ames voluntarily reduced its demand to the $1.9
million transferred to Cellmark immediately preceding the
petition date.

familiarity with the underlying facts, procedural history, and specification of issues for review is assumed.

## I.

When reviewing a decision of the Bankruptcy Court, this Court reviews the Bankruptcy Court's conclusions of law de novo but accepts its findings of fact unless they are clearly erroneous. See Fed. R. Bankr. P. 8013; In re Halstead Energy Corp., 367 F.3d 110, 114 (2d Cir. 2004). Mixed questions of law and fact are reviewed de novo, giving deference to the Bankruptcy Court's factual findings unless they are clearly erroneous. In re Vebeliunas, 332 F.3d 85, 90 (2d Cir. 2003); In re Teligent, Inc., 326 B.R. 219, 224 (S.D.N.Y. 2005).

## II.

### A.

Cellmark first challenges the Bankruptcy Court's conclusion that the payments in question were preferential transfers under section 547(b) of the Bankruptcy Code. In particular, Cellmark disputes the Bankruptcy Court's finding that Cellmark failed to rebut the statutory presumption of debtor insolvency.[2]

---

[2] Debtor insolvency is one of five elements that must be satisfied for a payment to be recoverable as a preferential transfer. See 11 U.S.C. § 547(b).

"Insolvency is a question of fact, and the findings of the
Bankruptcy Court in this regard will not be disturbed unless
they are clearly erroneous." In re Roblin Indus., Inc., 78 F.3d
30, 35 (2d Cir. 1996) (citations omitted). Under section 547(f)
of the Bankruptcy Code, a debtor is presumed to have been
insolvent during the ninety days preceding the filing of the
petition. 11 U.S.C. § 547(f); Roblin, 78 F.3d at 34. This
presumption may be rebutted, but the party challenging the
avoidability of the transfer bears the burden of proof to
"introduc[e] some evidence that the debtor was not in fact
insolvent at the time of the transfer." Roblin, 78 F.3d at 34;
see also In re Vasu Fabrics, Inc., 39 B.R. 513, 516 (Bankr.
S.D.N.Y. 1984). Section 101(32) of the Bankruptcy Code defines
the term "insolvent," in the context of a corporate business
debtor, to mean "financial condition such that the sum of such
entity's debts is greater than all of such entity's property, at
a fair valuation . . . ." 11 U.S.C. § 101(32)(A). Thus,
insolvency is measured with reference to the "fair market price
of the debtor's assets that could be obtained if sold in a
prudent manner within a reasonable period of time to pay the
debtor's debts." Roblin, 78 F.3d at 35. The Bankruptcy Court
concluded that Cellmark had failed to rebut the presumption of
insolvency because Cellmark relied only upon Ames' books and
records as of the time of the bankruptcy filing, and the

3

schedules of assets and liabilities filed by Ames at the outset of the bankruptcy proceeding, all of which, the court found, listed the book value rather than the fair market value of Ames' assets and liabilities. In re Ames Dep't Stores, Inc., 450 B.R. 24, 31-32 (Bankr. S.D.N.Y. 2011).

Cellmark does not appear to contest this finding but instead argues that the Bankruptcy Court erred as a matter of law in concluding that such evidence was insufficient to rebut the presumption of insolvency. However, "book values are not ordinarily an accurate reflection of the market value of an asset[,]" Roblin, 78 F.3d at 36 (collecting cases), and schedules or other financial documents based on the book value of the debtor's assets have generally been deemed insufficient to rebut the presumption of insolvency, see, e.g., In re The Heritage Org., L.L.C., 413 B.R. 438, 501-02 (Bankr. N.D. Tex. 2009); In re Intercontinental Polymers, Inc., 359 B.R. 868, 873 (Bankr. E.D. Tenn. 2005) (collecting cases); In re Luster-Coate Metallizing Corp., No. 01-22764, 2004 WL 432038, at *6 (Bankr. W.D.N.Y. Feb. 3, 2004).[3] Thus, the Bankruptcy Court did not err

---

[3] The decision of the Court of Appeals for the Second Circuit in Roblin is not to the contrary. In Roblin, the court did not hold that a debtor's schedules based on the book value of assets were alone sufficient to demonstrate solvency or insolvency but instead held that such schedules constitute one piece of competent evidence from which inferences about insolvency can be drawn. See Roblin, 78 F.3d at 36 ("[W]hile book values alone

in concluding that, because Cellmark offered no evidence of the fair market value of Ames' assets, it failed to rebut the presumption of insolvency.[4]

## B.

Cellmark next contends that the Bankruptcy Court erred in concluding that Cellmark failed to establish the ordinary course of business defense to the preference statute. In order to establish this defense, Cellmark bore the burden of proving three elements by a preponderance of the evidence: (1) that the debt was incurred by the debtor in the ordinary course of business; (2) that the transfers were made in the ordinary course of business or financial affairs of the debtor and the transferee; and (3) that the transfers were made according to ordinary business terms. 11 U.S.C. § 547(c)(2); 11 U.S.C. §

---

may be inappropriate as a direct measure of the fair value of property, such figures are, in some circumstances, competent evidence from which inferences about a debtor's insolvency may be drawn." (citations omitted)).

[4] The Bankruptcy Court also noted that Ames' financial statements did not include $200 million of bond debt that Ames guaranteed to its corporate parent. Ames, 450 B.R. at 32. Cellmark contends that it was error to evaluate the amount of this debt at face value rather than actual value. However, this is beside the point, given that the Bankruptcy Court's holding was not based on the book value of the assets and liabilities but rather on the absence of evidence of the fair market value of Ames' assets. See id. at 31-32.

SPA-6

547(g).[5]  The Bankruptcy Court found, as a mixed question of law
and fact, that the second element was not met — namely, that the
transfers were not made in the ordinary course of business.[6]
Ames, 450 B.R. at 35.  Mixed questions of law and fact are
reviewed de novo, with embedded findings of fact reviewed for
clear error.  Vebeliunas, 332 F.3d at 90; Teligent, 326 B.R. at
224.

The Bankruptcy Court's conclusion that the transfers in
question were not made in the ordinary course of business was
correct and supported by the evidence as a whole.  The
Bankruptcy Court applied several factors relied upon by courts
in this Circuit in assessing whether a given transfer was made
in the ordinary course of business, such as the prior course of
dealings of the parties, the amount of the payment, the manner
of the payment, and whether the payment was the result of any

---

[5] As the Bankruptcy Court noted, section 547(c)(2) of the
Bankruptcy Code was amended by the Bankruptcy Abuse Prevention
and Consumer Protection Act of 2005.  However, because the
amendments only apply to bankruptcy filings after October 17,
2005, and Ames filed for bankruptcy in 2001, the pre-amendment
version of section 547(c)(2) applies.  See Ames, 450 B.R. at 32
n.43.  In the amended version of section 547(c)(2), a creditor
need only prove, in addition to the first element, that either
the second or third element are met, rather than both.  See 11
U.S.C. § 547(c)(2).

[6] The parties did not dispute the first element, and the
Bankruptcy Court assumed without deciding that the third element
was met.  Ames, 450 B.R. at 32, 35 n.53.

pressure by the creditor or favoritism by the debtor.  See Ames,
450 B.R. at 32 & n.45 (citing In re 360networks (USA) Inc., 338
B.R. 194, 210 (Bankr. S.D.N.Y. 2005) (collecting cases)).  The
Bankruptcy Court found that the transfers at issue were unique
in terms of the manner and timing of payment, and that they
deviated from the baseline of past payments between the parties.
In particular, the Bankruptcy Court noted that Invoice 70 — an
invoice for close to $1.4 million that was paid in two payments
— differed from past payments in that it was not issued in
numerical sequence, was paid in partial payments, and was sent
out and paid earlier than corresponding invoices from previous
years.  Ames, 450 B.R. at 29, 33-34.  The Bankruptcy Court found
particularly persuasive the fact that Invoice 70 had been
manually generated, which was unprecedented in the parties'
three-year relationship and which required both Cellmark and
Ames to override their computerized systems in order to generate
and to pay the invoice.  Id. at 29-30, 33.  The Bankruptcy Court
found that the explanations of Cellmark's witnesses for the
unique nature of Invoice 70 were not credible and concluded that
the invoice had been manually generated for the purpose of
obtaining payment from Ames earlier than usual and before the
Petition Date.  Id. at 33-34.

The Bankruptcy Court also found evidence of favoritism by
the debtor, noting that Ames had stopped using an automated

7

accounts payable system during the preference period and instead had begun making individualized decisions about payment based on the identity of the vendor and the needs of Ames' business.  Id. at 27, 34.  These decisions, the Bankruptcy Court found, were influenced by the actions of Eugene Bankers, Ames' Senior Vice President of Marketing and Advertising, who repeatedly inquired about the status of payments to Cellmark and made comments about the importance of Cellmark being paid.  Id. at 27-28, 34-35. Therefore, the Bankruptcy Court correctly concluded that, on balance, the relevant factors weighed against a finding that the transfers in question had been made in the ordinary course of business.

Cellmark, however, takes issue with several of the Bankruptcy Court's factual findings.  In particular, Cellmark contends that the Bankruptcy Court erred in finding that the explanations of Cellmark's witnesses for the manual preparation of Invoice 70 were not credible and in finding that Invoice 70 had been manually generated for the purpose of obtaining early payment.  However, there was plainly significant factual support for these conclusions.

First, as the Bankruptcy Court found, the explanation provided by two of Cellmark's witnesses for the manual preparation of Invoice 70 — namely, that Ames preferred to have a single invoice for each printing event, which could not always

8

be accomplished through Cellmark's computerized system[7] — was inconsistent with the deposition testimony of one of these witnesses and with documentary evidence indicating that Cellmark had sent multiple invoices per printing event to Ames in the past. Ames, 450 B.R. at 33-34. Based on these facts, it was not clearly erroneous for the Bankruptcy Court to find that these explanations were not credible, especially in light of the deference afforded to the Bankruptcy Court's credibility determinations. See, e.g., In re Boyer, 328 F. App'x 711, 716 (2d Cir. 2009) (summary order); In re Pisculli, 426 B.R. 52, 59 (E.D.N.Y. 2010), aff'd 408 F. App'x 477 (2d Cir. 2011) (summary order).

Second, the Bankruptcy Court's conclusion that Invoice 70 had been manually generated for the purpose of obtaining early payment was also not clearly erroneous, in light of the unique aspects of the invoice's timing and manner of payment and the court's finding that no credible explanation for these unique features had been provided. Cellmark emphasizes that manually-

---

[7] Cellmark claims that one of these witnesses — Dominick Merole, Cellmark's Credit Manager — never gave testimony to this effect at trial. However, in both Merole's trial affidavit and on cross-examination at trial, he does state that Invoice 70 was manually generated because of the need to avoid multiple invoices per printing event. (Dominick J. Merole Aff. at ¶¶ 13-15, In re Ames Dep't Stores, Inc., 450 B.R. 24 (Bankr. S.D.N.Y. 2011) (Nos. 01-42217, 03-06261), ECF No. 64.)

SPA-10

generated invoices were also prepared after Ames' bankruptcy filing, which, according to Cellmark, demonstrates that the mere fact that Invoice 70 was manually prepared is not indicative of any motive of collection pressure. However, it was reasonable for the Bankruptcy Court to attach little weight to these additional invoices, given that they did not relate to the pre-preference or preference period and did not deviate as significantly from the parties' prior methods of payment as did Invoice 70. Ames, 450 B.R. at 33 n.47. Thus, the Bankruptcy Court's factual findings with respect to Invoice 70 were not clearly erroneous.

Cellmark further contends that the Bankruptcy Court erred as a matter of law in attaching too little significance to the court's own finding that Cellmark did not engage in any collection pressure with respect to the transfers at issue. Id. at 28 & n.16. However, the absence of creditor pressure is only one factor to be considered, and the Bankruptcy Court concluded that "the other factors — the lump sum or partial payments, the manual preparation of the invoice, and the fact that the invoice was out of sequence . . . outweigh [this] single factor on which Cellmark bases its entire ordinary course of business defense." Id. at 34. This conclusion was not erroneous. Cellmark also asserts that the Bankruptcy Court should not have considered evidence of debtor favoritism by Ames but rather should only

have analyzed whether Cellmark, the creditor, engaged in
collection pressure with respect to the transfers at issue.
However, Cellmark does not cite any case holding that it is
error for a Bankruptcy Court to consider both debtor and
creditor behavior in analyzing the ordinary course of business
defense, and, indeed, several courts have done so. See, e.g.,
In re Spirit Holding Co., Inc., 153 F.3d 902, 905 (8th Cir.
1998) ("The relevant legislative history . . . states that the
ordinary-course-of-business exception discourages unusual action
by either the debtor or his creditors." (internal quotation
marks and citation omitted)); In re CM Holdings, Inc., 264 B.R.
141, 154 (Bankr. D. Del. 2000) ("[I]t is not only undue pressure
by creditors that might result in a finding [of] . . .
preferential transfers but unacceptable debtor favoritism as
well . . . .").

Finally, Cellmark raises a host of other purported legal
errors, asserting that the Bankruptcy Court erred by attaching
too little or too much weight to certain pieces of evidence and
in relying upon certain factors that, according to Cellmark, are
alone insufficient to defeat the ordinary course of business
defense. However, the Bankruptcy Court did not rely on one
factor or one piece of evidence in isolation in determining that
the transfers were not made in the ordinary course of business

11

SPA-12

but instead correctly concluded that the factors and evidence as a whole weighed in favor of such a finding.

Accordingly, the Bankruptcy Court did not err in finding that Cellmark failed to show by a preponderance of the evidence that the transfers in question were made in the ordinary course of business.

### III.

Cellmark next challenges certain discovery-related and evidentiary rulings of the Bankruptcy Court, as well as the Bankruptcy Court's denial of its motion for a new trial.  These rulings are reviewed for abuse of discretion.  Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006); Wills v. Amerada Hess Corp., 379 F.3d 32, 41 (2d Cir. 2004); Luciano v. Olsten Corp., 110 F.3d 210, 217 (2d Cir. 1997).

### A.

Cellmark first contends that the Bankruptcy Court abused its discretion by declining to deem admitted Cellmark's requests for admissions concerning the absence of creditor pressure by Cellmark, despite Ames' significant delay in responding to these requests.  While Rule 36(a)(3) of the Federal Rules of Civil Procedure[8] provides that a request for admission shall be

---

[8] Federal Rule of Civil Procedure 36 is applicable in bankruptcy proceedings.  See Fed. R. Bankr. P. 7036.

admitted if not responded to within thirty days, a court retains
discretion under Rule 36(b) to permit the withdrawal or
amendment of such an admission "if it would promote the
presentation of the merits of the action and if the court is not
persuaded that it would prejudice the requesting party in
maintaining or defending the action on the merits." Fed. R.
Civ. P. 36. The Bankruptcy Court found that deeming the
requests admitted was not warranted because, while Ames'
responses to the requests had been untimely and insufficient,
Cellmark suffered no prejudice "other than having to prove the
entirety of its case on the merits . . . ." (Hr'g Tr., 9, Apr.
13, 2009.) Moreover, the court found, admitting the requests
would detract from a resolution of the case on the merits.
(Hr'g Tr., 10, Apr. 13, 2009.) This conclusion was not an abuse
of discretion.[9] See Garden City Boxing Club, Inc. v. Rice, No.
04 Civ. 3100, 2005 WL 613249, at *4 (S.D.N.Y. Mar. 14, 2005)
("Permitting a party to dispute a central issue in an action may
serve the presentation of the merits of an action."); Sec. Ins.

---

[9] The fact that Ames did not file a formal motion to withdraw the
admissions does not compel a contrary result. While some courts
have refused to withdraw admissions in the absence of a formal
motion, it was not an abuse of discretion for the Bankruptcy
Court not to require such a motion in this case. See, e.g.,
Kerry Steel, Inc. v. Paragon Indus., Inc., 106 F.3d 147, 153-54
(6th Cir. 1997); In re Van Dyck/Columbia Printing, 289 B.R. 304,
318 (D. Conn. 2003).

Co. of Hartford v. Trustmark Ins. Co., 217 F.R.D. 296, 298 (D. Conn. 2002) ("The prejudice contemplated by Rule 36(b) is not merely that the party obtaining the admission must, as a consequence of the withdrawal, prove the matter admitted . . . .").

It was also not an abuse of discretion for the Bankruptcy Court to deny Cellmark's motion for sanctions. A court has "broad discretion" in determining whether to impose sanctions for discovery abuses and any such sanctions "must be just and commensurate" with the abuse in question. Biosafe-One, Inc. v. Hawks, 639 F. Supp. 2d 358, 370 (S.D.N.Y. 2009), aff'd 379 F. App'x 4 (2d Cir. 2010) (summary order). Cellmark sought sanctions in the form of an award of attorney's fees and an entry of judgment in Cellmark's favor. "The sanction of dismissal is a drastic remedy that should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions." Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 140 (2d Cir. 2007) (internal quotation marks and citations omitted). The Bankruptcy Court did not abuse its discretion in concluding that such a severe sanction was not warranted here, especially in view of its findings that Ames' conduct was not intentional or deceptive and that Cellmark suffered no prejudice other than an "inability to secure a windfall ruling through default admissions gained from

14

a tardy response to the [requests for admission]." (Hr'g Tr.,
12, Apr. 13, 2009.)  Nor, in light of these considerations, was
it an abuse of discretion to decline to impose sanctions in the
form of attorney's fees.  Thus, the Bankruptcy Court did not
abuse its discretion in refusing to deem the requests for
admissions admitted or in denying Cellmark's motion for
sanctions.

### B.

Cellmark also contends that the Bankruptcy Court abused its
discretion in making certain evidentiary rulings.

First, Cellmark contends that the Bankruptcy Court
improperly restricted Cellmark's ability to present rebuttal
evidence.  At both the close of trial and during a later status
conference, Cellmark requested permission to present further
testimony by one of its witnesses, Mr. Spain, to rebut cross-
examination indicating that Cellmark had issued multiple
invoices per printing event in the past.  The Bankruptcy Court
allowed Cellmark to renew its arguments for such rebuttal
evidence in its post-trial briefing.  In its post-trial
briefing, Cellmark presented an offer of proof with respect to
the testimony of two proposed rebuttal witnesses — Mr. Spain and
an additional witness not previously brought to the attention of
the court — and also attached several exhibits not presented at
trial and, according to Cellmark, not produced in discovery,

SPA-16

including manually-generated invoices prepared after Ames'

bankruptcy filing.  (Def.'s Post-Trial Mem. of Law ("Def.'s

Post-Trial Mem.") at 29-32 & Ex. B, In re Ames Dep't Stores,

Inc., 450 B.R. 24 (Bankr. S.D.N.Y. 2011) (Nos. 01-42217, 03-

06261), ECF No. 38.)  While the Bankruptcy Court never ruled on

the request for rebuttal testimony by the two witnesses, the

court did consider the additional invoices attached as exhibits

and ultimately found them unpersuasive.  Ames, 450 B.R. at 33,

n.47.  A trial court has "wide discretion in determining whether

to permit evidence on rebuttal."  United States v. Tejada, 956

F.2d 1256, 1266 (2d Cir. 1992).  It was plainly not an abuse of

this discretion for the Bankruptcy Court to decline to allow

additional testimony from Cellmark's witnesses, especially given

that the Bankruptcy Court did consider the invoices submitted in

the post-trial briefing, which were a key subject of the

proffered testimony of these witnesses.  (Def.'s Post-Trial Mem.

at 29-32.)

Second, Cellmark argues that the Bankruptcy Court erred in

allowing Ames' witnesses to testify about statements allegedly

made to them by Cellmark or Ames employees pertaining to alleged

pressure by Cellmark.  However, the Bankruptcy Court indicated

that it would not consider the alleged statements for their

truth and therefore those statements were not hearsay.  See Hr'g

Tr., 7-9, 12-13, July 29, 2009; Fed. R. Evid. 801(c).  Moreover,

16

the court indicated that, while it would admit the testimony, the parties could argue its relevance. (Hr'g Tr., 7-9, 13, July 29, 2009.) Ultimately, the Bankruptcy Court did not find that any pressure was exerted by Cellmark. Ames, 450 B.R. at 28 & n.16. Cellmark has failed to show that the Bankruptcy Court relied on the challenged testimony to Cellmark's detriment. The Bankruptcy Court's evidentiary rulings were not an abuse of discretion.

### c.

Finally, Cellmark claims that the Bankruptcy Court abused its discretion in denying Cellmark's motion for a new trial. This motion was based exclusively on the proposed testimony of Thomas Powell, a print buyer at Ames, who, Cellmark claims, would have corroborated Cellmark's witnesses' explanations for why Invoice 70 was manually generated. However, the Powell affidavit proffered by Cellmark merely reiterated explanations that the Bankruptcy Court previously found to be unpersuasive and inconsistent with the documentary evidence — namely, that Ames preferred to receive a single invoice for each printing event. (Thomas E. Powell Aff. ("Powell Aff.") at Ex. A ¶ 5, In re Ames Dep't Stores, Inc., 450 B.R. 24 (Bankr. S.D.N.Y. 2011) (Nos. 01-42217, 03-06261), ECF No. 46.) Nor does the Powell affidavit shed light on the other aspects of Invoice 70 that the Bankruptcy Court found troubling. The affidavit states that

17

Powell could not recall why the timing of Invoice 70 differed from that of other payments and that Powell was not involved in Ames' payment process for paper vendors. (Powell Aff. ¶¶ 6-7.) Thus, it was reasonable for the Bankruptcy Court to conclude that this new testimony would not impact its earlier decision and to deny the motion for a new trial on this basis. (Hr'g Tr., 27-31, May 19, 2011.) See LiButti v. United States, 178 F.3d 114, 119 (2d Cir. 1999) (party seeking new trial on the basis of newly-discovered evidence must "demonstrate a probability that the newly discovered evidence would change the outcome").

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the remaining arguments are either moot or without merit. For the reasons explained above, the judgment of the Bankruptcy Court is affirmed. The Clerk is directed to close this case and to close all open motions.

SO ORDERED.

Dated:     New York, New York
           February 28, 2012

_____
John G. Koeltl
United States District Judge

18

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re                                               :
                                                    :        Chapter 11 Case No.
AMES DEPARTMENT STORES, INC., *et al.*,             :        01-42217 (REG)
                                                    :
        Debtors.                                    :        Jointly Administered
                                                    :
-------------------------------------------------------------x
AMES MERCHANDISING CORPORATION,                     :
                                                    :        Adversary Proceeding
                          Plaintiff,                :        No.03-06261 (REG)
                                                    :
        vs.                                         :
                                                    :        **JUDGEMENT**
CELLMARK PAPER INC.,                                :
                                                    :
                          Defendant.                :        BC 11,0142
-------------------------------------------------------------x

For the reasons set forth in the Court's March 28, 2011, Decision After Trial, judgment is

hereby granted to plaintiff Ames Merchandising Corporation and against defendant Cellmark Paper

Inc. in the amount of $1,899,970.73, plus pre-judgment interest in the amount of $15,516.25,

calculated for the period July 23, 2009 through April 5, 2011, for a total judgment amount of

$1,915,486.98.

Dated:        New York, New York
              April 8, 2011


                                          *s/ Robert E. Gerber*
                                          The Honorable Robert E. Gerber
                                          United States Bankruptcy Judge